MARGARET LAMB, APPELLEE, v. JOHN E. LAMB ET AL., APPELLANTS.

FILED NOVEMBER 12, 1913.    No. 17,045.

1. **Appeal:** TRIAL DE NOVO. This being an action in equity, we are upon appeal required to try the issues *de novo,* without reference to the decision of the lower court. Upon the evidence in the record, which is outlined in the opinion, it is found that the decree is not supported by the evidence.

2. ———: REVERSAL: DIRECTING DECREE. When, in an action in equity, it is apparent upon appeal to this court that no further evidence can be furnished, this court will, upon reversal, direct such decree as the pleadings and evidence require.

APPEAL from the district court for Nance county: GEORGE H. THOMAS, JUDGE. *Reversed with directions.*

*John J. Sullivan,* for appellants.

*W. F. Critchfield, contra.*

SEDGWICK, J.

The plaintiff, Margaret Lamb, began this action in the district court for Nance county to set aside and cancel a

deed for a quarter section of land in that county which she had executed to defendant John E. Lamb. The court found the issues in favor of the plaintiff and entered a decree accordingly, and the defendants have appealed.

The plaintiff was the widow of Bartholomew Lamb, and owned several quarter sections of land and other real estate in her own right, and also certain pieces of land which had been devised to her by her husband. She had three sons and three daughters, and concluded to make a division of the lands among her sons and daughters and two grandchildren. For that purpose she employed and consulted with the defendant Shields to assist her in making the division, and this was done without the assistance and apparently without the knowledge of her children and grandchildren to whom she had decided to convey the property. Her purpose was to make an equal division among her children as far as practicable, and she appears to have given the matter careful consideration, and executed eight several deeds, one to each of her six children and one to each of the two grandchildren. She also procured a lease of each of the tracts of land to be prepared to be executed by each of the grantees, respectively, leasing the land to her during her natural life. These deeds and drafts of leases she placed in the hands of the defendant Shields, the deeds to be delivered to the grantees, respectively, and with instruction to procure the execution of the leases. Afterwards this defendant John E. Lamb executed the lease and delivered it to Mr. Shields for the plaintiff, and claimed that Mr. Shields had delivered the deed to him. It is alleged in the petition that the plaintiff had made a mistake in the description of the land in the deed to the defendant.

The case, as it is presented here, involves the determination of two questions of fact: Was the deed for the land in question delivered to the defendant John E. Lamb by authority of the plaintiff? And, if so, was there such a mistake of fact on the part of the plaintiff in the execution of the deed as to require a cancelation of the deed on that account?

The evidence upon the questions so presented must be considered in the light of the conditions and circumstances surrounding the whole transaction. The plaintiff was about 75 years of age, and was in feeble health, and appears to have had an equal regard for all of her children, and an earnest desire to make an equal division of the property among them. She desired, as she says, to avoid any trouble and dissension, and to that end she determined to make the division herself, with the help of Mr. Shields, in whom she had confidence, and who appears to have acted in an honorable and disinterested manner in the whole transaction. Her son, Bartholomew Lamb, was dissatisfied, and when his deed was presented to him, and he ascertained that the quarter section of land which is involved in this litigation had been deeded to the defendant John E. Lamb, he complained to his mother, and she then requested Mr. Shields to change the deed so that Bartholomew should get this land. In the division two deeds had been executed in favor of Bartholomew, one conveying a quarter section of land and the other another tract. He accepted the deed of the smaller tract, and took possession of the land and made some improvements thereon, but refused to accept the deed and execute the lease of the quarter section. After the trouble arose in regard to the deed of the land in dispute, Mr. Shields, under instructions from the plaintiff, and apparently with consent of all the parties, delivered other deeds to the respective parties for whom they were intended, which were placed on record, and the life leases, duly executed, were delivered accordingly. Mr. Shields testifies that he delivered the deed of the quarter section in this litigation to the defendant John E. Lamb, who then gave him $1 as recording fee, and requested him to place the deed upon record, and also executed the lease and delivered it to Mr. Shields for the plaintiff, and that this was in accordance with his instructions from the plaintiff. The defendant John E. Lamb testifies to the delivery of the deed to him and execution of the lease by him, as stated by Mr. Shields.

The plaintiff testifies that she did not authorize Mr. Shields to deliver any of the deeds until all of the leases were executed and delivered to him. The plaintiff's testimony is not very satisfactory upon any of the matters to which it relates. She was evidently very much disturbed over the dissension which had arisen between her two sons, and was vacillating and uncertain in the position which she took in her testimony at different times, as well as in her interview with different parties interested. She consulted her attorney, and instituted these proceedings, apparently upon her own responsibility at the time, but she afterwards declared when under oath, as well as when she was not under oath, that she did not want this litigation to continue and that she wanted the action dismissed. She testified: "I was satisfied with it, but since it made the trouble I discovered there was a mistake." After the action was pending in this court she signed a formal motion to "reverse the judgment and dismiss the action," which was filed in the case in this court. An application was then filed in the probate court for Nance county to place her under guardianship, and that court appointed Mr. Shields as guardian of her person and property. Mr. Shields, as her guardian, then resisted her motion to reverse the decree of the trial court and dismiss the action in this court, and asked that this case be determined upon the evidence taken on the trial below. He filed a transcript of the record of his appointment as guardian, and affidavits were filed by both parties supporting and resisting the motion. It was agreed by the parties that the motion should be determined upon the final submission of the case. It is not necessary to determine the merits of that motion, because of the conclusion that we have reached upon the evidence in the record. The notary who took the acknowledgment of the deed testified that his understanding was that none of the deeds were to be delivered until all of the leases had been executed. He does not explain how he arrived at that understanding, and does not testify to any of the instructions that the plaintiff

gave Mr. Shields in regard to the delivery of the deeds by
Mr. Shields. We think that the evidence shows, substan-
tially without contradiction, that Mr. Shields was au-
thorized to deliver the deed to the defendant upon his
execution of the lease, and that he delivered the deed, as
testified to by him.

The plaintiff testifies that, when Bartholomew called her
attention to the matter, she discovered that she had made
a mistake in the division. The evidence shows that, while
she was making a division of the property and instructing
Mr. Shields as to the preparation and execution of the
deeds, they had an atlas or chart of the lands which she
owned, and upon that she pointed out the lands which she
wanted to deed to each of the parties. This particular
quarter section in litigation lay just south and adjoining
what was called the "home place." This was shown upon
the atlas, and she at first designated this quarter section
as one to be deeded to her son Bartholomew. Afterwards,
upon consideration of the value of the lands to be conveyed
to the respective parties, she discovered that, if this quar-
ter was conveyed to Bartholomew, it would, under the
division as she then proposed, give to Bartholomew much
more in value than to any of the others, and her desire was
to make an equal division. She therefore partially re-
arranged the matter, and instructed Mr. Shields to draw
the deed of this particular quarter section to the defend-
ant. It is clear that she made no mistake as to the par-
ticular piece of land that she deeded to the defendant, but
the mistake that she accused herself of making was in not
making the division so that it would be satisfactory to all
of the beneficiaries of her bounty. She says that Bar-
tholomew wanted this particular quarter section of land,
and it appears that when she was with him and under his
influence, or under the influence of those who were assist-
ing him, she was convinced that she had made a mistake
in not arranging it so that Bartholomew would be satisfied.
This controversy is plainly between the two sons, Bar-
tholomew and John, and it illustrates the wisdom of the

plaintiff in making the division upon her own responsibilty, and in avoiding the controversy that she feared would arise if she attempted to satisfy all of the parties before the division was made. It appears that the division as made gives to each' of the parties substantially the same value. Bartholomew's contention is inconsistent. He appears to attempt to keep a part, at least, of the land conveyed to him, and at the same time inspire his mother to cancel the deed to his brother John so that that quarter may be conveyed to him also. The petition involves only the one quarter, and there is no attempt made to place the plaintiff in a position to make redivision of the land.

The decree is not supported by the evidence, and is reversed and the cause remanded, with instructions to enter a decree for the defendant, requiring a delivery of the deed in controversy to him.

REVERSED.

BARNES, LETTON and ROSE, JJ., not sitting.